**WILSON ATHLETIC GOODS MFG. COMPANY, Inc., Plaintiff,**

v.

**KENNEDY SPORTING GOODS MFG. COMPANY, Inc., and J. Lawrence Kennedy, Defendants.**

**Civ. No. 5148.**

United States District Court
N. D. New York.

Jan. 5, 1955.

Rudd, Penberthy & Nelson, Utica, N. Y., for plaintiff, Francisco Penberthy, Utica, N. Y., Warren C. Horton, F. Thrall Brewer, and Louis Simpson, Chicago, Ill., of counsel.

Ferris, Hughes, Dorrance & Groben, Utica, N. Y., for defendants, Gilbert Hughes, Utica, N. Y., Watson, Leavenworth, Kelton & Taggert, by David A. Woodcock and Norman N. Schuttler, New York City, of counsel.

BRENNAN, Chief Judge.

This is the usual patent infringement action, requesting the usual relief. The answer asserts the invalidity of plaintiff's patent, denies infringement, sets up the affirmative defense of estoppel, and contains a counterclaim requesting a declaratory judgment of invalidity and alleging unfair competition. The issues have been narrowed by the defendant's abandonment of the unfair competition counterclaim and by the concession that if the Court finds that plaintiff's patent is valid, then a finding of infringement may follow. The question of validity is the principal issue here.

The plaintiff is a well known manufacturer of athletic goods. It is the owner of the patent No. 2231204 in litigation here, issued February 11, 1941 upon an application filed January 7, 1939 by A. J. Turner who assigned his rights therein to Wilson's corporate predecessor. For convenience the patent was referred to upon the trial and will be referred to herein as the Turner patent.

The defendant, Kennedy Sporting Goods Manufacturing Company Inc. is the manufacturer of sporting goods equipment at Utica, New York. It was incorporated about August 1952 and is principally owned by the defendant J. Lawrence Kennedy. The defendant corporation was organized for the purpose of purchasing the business of the Ken-Wel Company which had carried on the manufacture of sporting equipment for many years at New Hartford, New York and from 1936 to August 27, 1952 at Utica, New York. The defendants are actually the successors of the Ken-Wel Company (which will be referred to herein as Ken-Wel). The defendants are not to be confused with Bert Kennedy and Philip Kennedy who were connected with the Ken-Wel Company and the owners of certain patents referred to in the pleadings and discussed upon the trial. To clarify the subject it may be stated that the Kennedys connected with Ken-Wel are not related to the present defendants and they have no interest in this litigation.

Since validity of the Turner patent is the principal question involved, it would seem logical that its purpose and teachings must first be analyzed before the Court attempts to apply the test of invention thereto.

The patent itself and especially the claims contained therein are couched in language which is not readily grasped by the nonmechanical trained mind. Counsel in the briefs submitted contends that the invention cannot without error be defined in less than the language of the claims. From the discussions which occurred on the opening, the close of the case and from the evidence offered and the study of the patent itself, it is the Court's conclusion that the patent teaches the assembly of parts of a baseball glove having a one piece palm extended so as to form the front of the fingers, the backs of which are formed by two four-

chettes or right and left half pieces, one side of each being cut convexly from the tip of the finger down to the crotch or near the palm end of the finger. These half pieces are assembled by sewing the convex edges together, resulting in a curve in the finger inward or toward the palm of the hand. Any fulness or surplus material below the fingers and on the back of the hand is eliminated by narrowing each piece below the finger crotch on the back of the finger. The finger front is completed by affixing the remaining edge of each fourchette to the palm pieces which are extended to form the front of the fingers so that the seams are substantially straight and parallel. The greater length of the finger back thereby affords a natural forward curve, or because of its length is more easily forced into a curving or grasping position by the wearer when in use.

It seems clear that the purpose of the patent is to afford a glove which in its natural position assumes the natural position of the player's hand. The extra length or curvature in the back of the finger lends itself more readily to the closing grasp of the player's hand in his attempt to obtain the possession of the ball and the curvature lends no impediment to the straightening of the fingers in the player's attempt to reach a ball when its position requires the full extension of his fingers.

The object of the patent seems to be directed to the assembly of a baseball glove which in its natural position and while in normal use lends itself to the creation of a "pocket" with which to capture and retain a thrown or batted ball. The principal contribution to this end appears to the Court to consist in the forward and inward curve of the finger created by the convex cutting of the pieces which ultimately form the back thereof.

Patentability implies invention, a term which defies precise definition. In the oft-quoted case of Great A & P Tea Company v. Supermarket Corp., 340 U.S. 147, at page 152, 71 S.Ct. 127, 130, 95 L.Ed. 162, the court stated "The function of a patent is to add to the sum of useful knowledge." Invention to be patentable must therefore make such a contribution. Whether or not invention exists is essentially a question of fact to be determined in the light of the problem to be solved, the skill of the profession, the condition of the prior art and the public knowledge relating thereto.

There is no serious dispute as to the legal precedents which serve as guides in determining whether or not invention exists. A patent is presumed to be valid. The burden of establishing invalidity rests upon the parties asserting it. 35 U.S.C.A. § 282. The measure of proof required has been variously stated, but it would seem at least that convincing evidence of invalidity must be produced before the court is justified in making such a finding. Radio Corp. v. Radio Eng. Laboratories, 293 U.S. 1, at page 7, 55 S.Ct. 928, 79 L.Ed. 163. Commercial success, utility and imitation may well add strength to the prima facie showing. Schering Corp. v. Gilbert, 2 Cir., 153 F.2d 428, at page 432. The age of the patent and the fact that it has been widely used by competitors under royalty agreements is not without significance. The Court also appreciates that judicial precedents recognize that the trade of making baseball gloves does not remain static. Advancement or improvement is expected by those skilled in the art and does not necessarily constitute invention. Cuno Engineering Corp. v. Automatic Devices Corp., 314 U.S. 84, at page 90, 62 S.Ct. 37, 86 L.Ed. 58; Sinclair & Carroll Co. v. Interchemical Corp., 325 U.S. 327, at page 330, 65 S.Ct. 1143, 89 L.Ed. 1644; Buffalo-Springfield Roller Co. v. Galion Iron Works, 6 Cir., 215 F.2d 686, at page 687. The assembly of old elements producing no new or unusual results is likewise lacking in invention. The whole must in some way exceed the sum of its parts. Great A & P Tea Co. v. Supermarket Corp., supra, 340 U.S. at page 152, 71 S.Ct. 127. The monopoly granted by a patent must contribute to the sum of human knowledge to withstand an attack on its validity. Whether

or not we agree that the standard of invention has been raised in recent years, an advance in efficiency and utility resulting in a change in form, proportion or degree without a new or unusual result is not recognized as invention. Spring Air Co. v. Ragains, D.C., 96 F.Supp. 79, at page 82 and cases cited.

From history and experience one may surmise that the baseball glove came into existence primarily as an instrument of protection to the user. The growth of the sport and the increased skill of the performers dictated a continuing change in the glove used, so that it came to combine the elements of protection and utility. The present day glove like the glove manufactured under the Turner patent seems to emphasize the later element. Such change appears to have been progressive rather than abrupt.

The prior art in existence at the inception of the Turner patent disclosed a forward curving finger stall afforded by a transverse seam across the rear portion of the finger so as to provide a greater length thereto (O'Hara Patent No. 2109974). The median seam in the back was disclosed in the Kennedy Patent No. 1434576 and 1490174. The use of convexing cut leather material in producing curvature was well known in shoes (Pollock Patent No. 14882) and in footballs and punching bags. Figure 2 in the Kennedy Patent No. 1435478 appears to be cut convexly. The patent does not mention such a feature or discuss a curvature of the finger. However as early as 1930 Ken-Wel manufactured a glove with a medial seam in the back of the fingers and a curvature near the tip of the finger stall. The testimony of former Ken-Wel employees to the effect that they worked upon and that the company produced gloves having curved fingers prior to 1930 appears impressive to the Court, and is at least partially confirmed by exhibits consisting of dies and catalogues. There was testimony to the effect that the curve became more pronounced as time passed and the work of the operator became more difficult. In other words the conceded curve near the tip of the finger as it existed in 1930 was gradually extended in degree and downward along the medial seam.

■ It appears without doubt that the Ohio-Kentucky Company, a competitor, produced a curved finger glove in 1938 which was sold for 1939 trade. The dates of this activity are not definitely fixed so that the Court is hesitant to find same as a prior use, but it may be given weight as showing an advancement in the skill of the art since it was produced without collaboration with the Turner inventor at about the time the Turner patent was applied for. Ruben Condenser Co. v. Aerovox Corp., 2 Cir., 77 F.2d 266, at page 268.

Although not mentioned in the Turner patent the plaintiff offered considerable evidence to show that prior to the manufacture of the curved finger glove, a principal problem facing the skilled ball player was the "breaking in" of a new glove. This process consisted of pounding the glove at the palm so as to create a "pocket" therein and it is readily inferable that each individual player sought to form such a pocket according to his individual likeness. The building up of the heel of the glove and the exaggerated size of the thumb and little finger, made by excess padding, taken together with the curved fingers all tended to create the "pocket", which was formally obtained in part by the "breaking in" process above described.

■ The danger of over simplifying an invention when viewed after the passage of time is recognized, Union Carbide & Carbon Corp. v. Stuart Laboratories, 3 Cir., 194 F.2d 823, at page 826, and due allowance is made therefor. Nevertheless the combination claims made here are subject to the admonition of Great A. & P. Tea Co. v. Supermarket Corp., supra, and the conclusion is expressed by the quotation taken from Concrete Appliances Co. v. Gomery, 269 U.S. 177, at page 185, 46 S.Ct. 42, at page 45, 70 L.Ed. 222:

"This progressive adaptation, much of which preceded and some of which was cotemporaneous with the Callahan adaptation, of well-

known devices to new but similar uses, 'is but the display of the expected skill of the calling, and involves only the exercise of the ordinary faculties of reasoning upon the materials supplied by a special knowledge, and the facility of manipulation which results from its habitual and intelligent practice.' Hollister v. Benedict Mfg. Co., supra, [113 U.S. 59] at page 73, [5 S.Ct. 717, 724, 28 L.Ed. 901]. No novel elements were used by Callahan in his device. We are unable to find that their use in combination in it was more than the application to them of mechanical skill in the course of a natural development and expansion of the art."

In view of the decision, it is unnecessary to discuss other questions raised herein. It is sufficient to conclude there is no inventive novelty in the claims of the Turner patent in suit and that they are void for want of invention over the prior art and the practices of the trade. Appropriate judgment will follow.